[Filed January 24, 1887.]

## JOHN McDEARMID v. JOHN R. FOSTER & CO.

LIENS OF LABORERS—CONSTRUCTION OF STATUTE—COMMON LAW.—Although the statute of Oct. 21, 1878 (Laws 1878, p. 102), providing for liens of laborers and others, has extended the rule of the common law in respect to the persons who can acquire such liens, and given a definite remedy for their enforcement, still, in the main, it is only declaratory of the common law, and must be interpreted in accordance with its principles.

SAME—POSSESSION NECESSARY TO SUPPORT.—To support a lien under said act there must, in the absence of a special agreement, be actual possession of the thing upon which it is claimed.

SAME—HARVESTING CROP.—Where the owner of a crop of growing wheat and the premises on which it is grown, employs another to cut and stack it on the said premises, which the latter does, he does not thereby gain such possession of the crop as will entitle him to a lien thereon.

UMATILLA COUNTY.    Defendants appeal.    Reversed, and complaint dismissed.

*L. B. Cox*, for Appellants.

A fair construction of our statute is, that the laborer has a lien, if he desires to avail himself of it, but he may waive it; if he wishes to avail himself of the right, he must make it manifest by the overt act of taking and retaining the property in his possession; not doing which, he will be taken to have waived his right, and his lien will be lost. (*Tucker* v. *Taylor*, 53 Ind. 93; *King* v. *Indian Orchard C. Co.*, 11 Cush. 231; *Morse* v. *Androscoggin R. R. Co.*, 39 Me. 285.)

*G. W. Walker*, for Respondent.

The act of Oct. 21, 1878 (Laws 1878, p. 102), gives a person who bestows labor on personal property a lien thereon for such labor, which is superior to all other liens. (Jones on Chat. Mort., Sec. 473, 144; *Scott* v. *Delahunt*, 5 Lans. 372; *Donnell* v. *The Starlight*, 103 Mass. 227.)

THAYER, J.—The respondent commenced an action in the court below against the appellants, to recover the possession of two hundred and six sacks of wheat, containing about four hundred and twenty-five bushels, marked " J. R. F. & Co. P.,"

alleged to have been wrongfully taken and detained from him, and in which he had a special property to the extent of one hundred and six dollars, which was less than the value of the wheat so taken. He also claimed twenty dollars as damages for the taking and detention of the said wheat. The appellants denied all the material allegations of the complaint, and set forth in their answer the following new matter of defense :

"And further answering the complaint, defendant alleges that the property mentioned in the complaint was formerly a growing crop of wheat owned by one William Burden; that the only claim of a special property which might have been made therein or thereto by the plaintiff is based on a pretended lien claimed by plaintiff for his services in heading the said crop; that the value of said wheat is only the sum of $225, or thereabouts; that on the seventh day of November, 1884, said William Burden was indebted to this defendant and one J. H. Kunzie, then partners, doing business under the firm name of John R. Foster & Co., in the sum of $628.16, and on said day, in order to secure said indebtedness, with interest thereon at the rate of ten per cent. per annum, said William Burden executed to this defendant and said J. H. Kunzie, as partners, a chattel mortgage on said property, which mortgage was by them filed on the tenth day of November, 1884, in the office of the county clerk of Umatilla County, State of Oregon, and has ever since remained there on file and wholly unsatisfied, . except as hereinafter stated ; that this defendant has been, since the first day of March, 1885, the owner of the said chattel mortgage and of the debt thereby secured ; that on the sixteenth day of September, 1885, the said William Burden delivered possession of the mortgaged property aforesaid to this defendant under said mortgage, and defendant took and disposed of the same, and applied the proceeds of the sale thereof upon his debt aforesaid."

The respondent, in his reply to the said matter, admitted that the property mentioned in the complaint was formerly a growing crop of wheat owned by William Burden, and that his special property therein was based upon a lien for work and labor

bestowed on the said crop in heading the same ; but denied that such lien was a pretended one ; admitted the chattel mortgage upon the crop, but denied that said Burden delivered the possession of the mortgaged property to the defendant under the mortgage, or that the latter disposed of the property, or applied the proceeds upon any debt.   The respondent also set out in his reply the following matter :

"And further replying to the answer, plaintiff alleges that the conditions of said mortgage were not broken until long after the seizure of said property by defendant, on the 16th day of September, 1885 ; that said conditions were broken on the 8th day of November, 1885, and not before ; that said mortgage provided that, in case its conditions were broken, it might be foreclosed by giving four weeks' notice, published in a newspaper of Umatilla County, of the time and place of said sale, and by selling at public auction ; that said mortgage was not foreclosed in the manner therein provided, or in any manner, or at all; that no notice whatever was ever given in any manner of the sale of said property ; that no sale of said property under said mortgage ever took place ; that said mortgage was filed for record on the 10th day of November, 1884, in the clerk's office of said county, and that said mortgage has not been renewed in any manner.

"That the lien created by said mortgage during its existence was inferior to and second to the said lien of this plaintiff, for said work and labor performed in heading said crop of wheat ; that defendant had actual notice of the existence of plaintiff's said lien, for work and labor so performed, three days prior to the alleged delivery of said wheat crop, on the 16th day of September, 1885, to said defendant by said Burden ; that at the time of the performing of said work and labor, defendant, by his agent, was present, and did not disclose the fact that he had any lien upon or interest in said crop of wheat ; that on or about July 1st, 1885, said defendant instructed said William Burden to employ persons to cut and harvest said wheat, and said Burden, being the owner of said grain, and in the lawful possession thereof, did employ this plaintiff to cut

said grain ; that the cutting and stacking of said wheat crop added to the value of said mortgaged property the full amount of this plaintiff's special property in said wheat, to wit, one hundred and six dollars.

The case was tried by a jury, who returned the following verdict:

" *John McDearmid,* plaintiff v. *John R. Foster & Co.,* defendants. We, the jury in the above entitled cause, find for the plaintiff, and that the plaintiff is the owner of a special property in the following described personal property, to wit: Two hundred and six sacks of wheat, containing about four hundred and twenty-five bushels, and marked J. R. F. & Co. P. ; one hundred and fifty-three sacks of which wheat was threshed about the second day of October, 1885, from wheat stacks standing on the east half of Section 11, Township 4 north, range 30 east, Willamette meridian, in Umatilla County, Oregon; and fifty-three sacks of which wheat was about the second day of October, 1885, threshed from wheat stacks standing on the north-west quarter of Section 34, Township 5 north, range 30 east, Willamette meridian, all in Umatilla County, Oregon.

" That said special property is and was of the value of $106, and that plaintiff is entitled to the immediate possession of said property.          W. F. HAMILTON, Foreman."

The following questions in the way of special verdict were also submitted for the jury to answer :

1. Was any portion of the grain in controversy within Umatilla County, at the time of the filing of this complaint, October 12, 1885 ?—No.

2. Was the plaintiff in continuous possession of the grain in controversy, from the date of the performance of his work upon it, down to the time when John R. Foster took possession of it ?—Yes.

3. Was the property in question wrongfully taken by defendant from plaintiff in Umatilla County, Oregon ?—Yes.

4. Was the grain in controversy in Umatilla County, Oregon, and in possession of defendant, at the time demand was

made on defendant to return the same to the plaintiff?—Yes.

On this verdict, a judgment was entered in favor of plaintiff for the return of said property, or in case return thereof cannot be had, for the value of plaintiff's special property therein, to wit, $106 and costs; from which judgment this appeal is taken.

The respondent offered himself as a witness in his own behalf upon the trial, and among other things testified to the following:

"I was in possession of the grain from about the 12th of August, 1885, ·to about the first or second of October, 1885. I headed the grain; did it at William Burden's instance; Burden was in possession of the grain; he sowed it, I headed it and stacked it. * * * The grain was all stacked when I finished heading. I never delivered possession of the grain to any person. I went back in about two weeks to see if it was all right, and passed by the grain several times thereafter, and looked at it. I left a man in charge of the grain—William Burden. I don't know the date of building the fence. I held possession of the grain all the time from when I first commenced work there under my lien, for the purpose of satisfying my claim." (On cross-examination:) "I did not do the work personally; Godfrey McAllister ran the header for me. I left the morning it commenced, and did not return until about two weeks after it was finished. When I passed by the grain, as testified in direct examination, I was going along the road to Cold Spring Landing, sometimes on other business, and sometimes purposely to see if any one was interfering with the grain. The grain was stacked in two places. It was left standing when stacked without any enclosure around it, except such as inclosed the fields, until I put the fences around the stacks, as I have testified. The reason I put the fences up was, I heard John R. Foster & Co. claimed the wheat and were going to take it. I fenced it in order to hold possession. I had possession all the time. The wheat stood naked in the fields on Burden's land. I did no other acts in regard to the grain than those to which I have testified. The fence was up before I

knew John R. Foster claimed the grain. Burden said to me before harvest he wanted the grain headed. No agreement was made about the heading or payment therefor. I had no conversation with defendant in regard to the matter."

The appellants gave evidence tending to show that they were the owners of the said chattel mortgage; that on the 16th day of September, 1885, the said William Burden delivered possession of the wheat to them, as it stood in the stacks, under said mortgage, and that they took and disposed of it, and applied the proceeds of the sale thereof upon their alleged debt. A great many questions were raised at the trial, and there are thirty-six assignments of error in the notice of appeal. I have not observed how long it took to try the case, but should conclude from the number of points made, that it must have taken a very long time. I shall not attempt to consider all the questions presented in the case. If I did, I should necessarily have to neglect other and more important business before this court.

The respondent claimed the lien upon the wheat, by virtue of his having headed and stacked it. He claims that the act to provide for liens of laborers, etc., approved October 21st, 1878, Session Laws of 1878, pp. 102, 103, gave him a lien for his labor referred to. This the appellants' counsel denies, and that is the main question in the case. The act referred to provides that "any person who shall make, alter, repair, or bestow labor on any article of personal property, at the request of the owner or lawful possessor thereof, shall have a lien upon such property so made, altered or repaired, or upon which labor has been bestowed, for his just and reasonable charges for the labor he has performed and the material he has furnished; and such person may hold and retain possession of the same until such just and reasonable charges shall be paid."

The word "lien" had long prior to the passage of this statute acquired a settled meaning. The term imported that the party was in possession of the thing he claimed to detain. It was a right to hold the property upon which payment was required to be made, either for the purchase price, or for some

care, labor or attention bestowed upon it.    A large class of persons at common law were authorized to claim such right. It included all persons who, by their labor or skill, had imparted an additional value to the goods or chattels in their custody, though it was confined mainly to tradesmen.    This statute has extended the right to others, who, before, would not have been allowed to claim its benefits.    Formerly, persons who pastured or fed " horses, cattle, hogs, sheep or other live stock," had no lien therefor.    But although the statute has extended the common law in the respect referred to, and has specified a definite remedy for its enforcement, still, in the main, it is only declaratory of the common law, and must be interpreted in accordance with its principles.    The lien under the statute is of the same nature it formerly was, and the same circumstances must combine to create it.    There must be a possession of the thing, otherwise there cannot, without a special agreement to that effect, be any lien.    The term " lien," as used in the statute, means the same it ever did : the right to hold the thing until the payment of the reasonable charges for making, altering, repairing or bestowing labor upon it.    Possession of the article is a requisite essential.    Unless, therefore, the respondent had the actual possession of the wheat in question, he had no lien upon it for the labor he bestowed in heading and stacking it.    He testified that he did have possession of the wheat, and the jury so found; but that was only a conclusion of law; whether he had possession or not must depend upon the facts and circumstances surrounding the affair.

According to his allegations and proofs, he was employed by the said William Burden, the proprietor of the crop and premises upon which it was raised, to do the work referred to. This did not invest him with the possession of it, any more than it would have invested him with the possession of Burden's cows if the latter had employed him to milk them, or of his apples, fruit and garden vegetables if he had employed him to gather them.    William Burden did not relinquish his own possession of the wheat because he employed the respondent to cut and stack it.    It was left upon his premises, and his cus-

tody and control of it never ceased. The respondent had a sort of possession of the wheat, but it was wholly subordinate to that of Burden. It was a possession in the nature of that of a servant over the goods of his master. There can be no doubt, it seems to me, upon this point, and that disposes of the case.

In *King* v. *The Indian Orchard Canal Company*, 11 Cush. 231, the latter party contracted with one Stearns to manufacture brick upon the company's land. Stearns was to erect a brick factory and furnish all the materials for the same, and complete it January 1, 1852. The company also stipulated that during the continuance of the contract Stearns might use sufficient ground in some convenient place or places for a brick-yard and lumber-yard, without charge; and also for one year after the expiration of the contract, at a moderate rent. Stearns selected a place on the company's land for a brick-yard, and employed King, the plaintiff, to make and burn on said lot two millions of brick on or before November 1, 1851; Stearns to furnish all the materials and apparatus necessary for making the same, and the plaintiff to perform the labor. In pursuance of this arrangement, the plaintiff finished on the 6th day of September, 1851, and his foreman remained on the yard and continued to count out brick for Stearns until September 13, 1851, when he notified the latter that he had other work to do elsewhere and could not count out any more, and that Stearns must do it for himself; that after that time Stearns' men did go on and count out the brick; that on the 20th of September, 1851, Stearns sold to the company 1,594,876 of the brick so manufactured by the plaintiff, and the latter thereupon commenced an action against the company for their conversion, having before forbade the company from removing them until he was paid, and the latter having proceeded to take them after such notice.

The question before the court was, whether or not the plaintiff had a lien upon the brick for his charges in manufacturing them. Bigelow, J., said: "Upon the undisputed facts of this case, it appears to us that the plaintiff fails to show any

such possession of the property in question as will support the lien which he sets up in order to maintain this action.    In the first place, he shows no right or interest in himself, either as owner, lessee or tenant, to the possession of the yard in which the brick was made and burned.    *   *   *    Upon these facts it is manifest that the plaintiff never had any exclusive and unconditional possession of the property.    It was at most only a mixed possession with Stearns, or rather a license to the plaintiff to enter upon and use the yard of Stearns for the purpose of making and burning the brick.    It is entirely clear that such a restricted and limited possession is insufficient to support a lien.    It amounts to nothing more than the ordinary transaction of work done by one person, in the manufacture of articles for another upon the premises of the latter.    The workman in such a case has, to a certain extent, possession of the property upon which his labor and services are expended ; but it is a qualified and mixed possession, which can form no valid basis for a lien."

The principle here laid down is decisive of the present case, and the reasoning is unanswerable.    There could, to my mind, be no greater absurdity than to hold that an employee of a farmer, to perform labor upon the farm, would be entitled to a lien for the work bestowed in cultivating the land or harvesting the crop, in the absence of a special contract creating it, to be followed by an actual and physical change of possession in the nature of a pledge.    The party who performs the labor or does the work in such a case, has a qualified possession of the property upon which it is bestowed.    The respondent had that character of possession of the wheat in this case, and it was that kind of a possession that the jury must have found he had, as they could not, under the pleadings and proofs, have found that he had the sole and exclusive possession of it, such as a person is required to have in order to claim a lien. The very fact that the wheat was stacked upon Burden's land, in the absence of such special agreement referred to, precluded the possibility of such a possession.

This view renders it entirely unnecessary to consider the oth-

er thirty-five grounds of error specified in the notice of appeal.

The judgment of the circuit court must be reversed, and the complaint in the action dismissed.