Submitted on briefs September 3, reversed September 24, 1918.

# HINER v. PITTS.

(175 Pac. 133.)

**Bailment—Lien for Work—Possession.**

1.  It was competent for the legislature, by enactment of Section 7497 et seq., L. O. L., as amended by Laws of 1911, page 213, as to liens upon chattels, to provide for a lien notwithstanding the claimants had not possession of the property, since the lien rests upon the doing of labor or furnishing material.

**Bailment—Lien—Loss—Lapse of Time.**

2.  Claimant of lien on chattel *held* to have performed work in various months under a single contract, so as to be entitled to a lien for the entire amount of work done, notwithstanding the lapse between dates on which the work was done.

**Bailment—Lien—Notice of Claim.**

3.  Where defendants, owning donkey-engine, desired its occasional repair during logging season, and authorized plaintiff to make the repairs on the job, so as to keep the engine running, plaintiff had a qualified possession, which was terminated by the mutual agreement to abrogate the contract, so that notice within 60 days after the abrogation of the contract was in time, under Section 7497 et seq., L. O. L., as amended by Laws of 1911, page 213.

⌊As to lien on automobile for repairs or storage, see note in Ann. Cas. 1916A, 630.⌋

From Tillamook: GEORGE R. BAGLEY, Judge.

In Banc.

The plaintiffs, claiming to be blacksmiths and machinists, are seeking to enforce a lien upon a donkey-engine for the reasonable value of their labor and material expended in repairing it at the request of the defendant Pitts, who was the owner of the same at the time the work was done. The defendant Schiffmann claims to be the owner of the machine by purchase from Pitts after the repairs were made. It is averred in the complaint:

"That on or about the twentieth day of December, 1916, said defendant Pitts and the plaintiffs herein en-

tered into a contract wherein and whereby said defendant Pitts employed plaintiff to overhaul said donkey-engine and equipment, and to place the same in good repair for operating purposes, plaintiffs to furnish such labor, skill and materials as would be necessary to complete said work, and it was also agreed, that inasmuch as said donkey-engine and machinery were being continuously used by defendant Pitts in said logging operations, that the plaintiffs should perform said work at times when the same were not in use by said Pitts, and at such times as would be convenient for all the parties, and that should any breaks or other defects develop in said donkey-engine and machinery during the time the plaintiffs were overhauling the same as hereinbefore set out, such breaks or defects should be repaired as a part of the plaintiffs' agreement in overhauling said donkey-engine.

"That on or about the twenty-second day of December, 1916, plaintiffs entered into the performance of the above agreements, and in performing the same expended labor, skill and materials upon the donkey-engine herein described, a statement of account of the labor, skill and materials so expended being attached to copy of lien which is attached to the complaint and marked 'Exhibit A.'

"That on or about the thirtieth day of March, 1917, and before the plaintiffs had completed the performance of the above-mentioned contract, said contract was, by mutual consent of the parties hereto, canceled, and the rendition of the labor, skill and materials provided in said contract was closed on said thirtieth day of March, 1917."

Besides this, it is alleged that the reasonable value of the labor, skill and materials laid out upon the engine was $136, which Pitts promised to pay and has not paid, except $10. Then follow allegations about filing a notice of lien, the expense thereof and the reasonable sum to be allowed as an attorney's fee.

Pitts did not appear, but Schiffmann answered, denying all the allegations of the complaint on information and belief, and further charged in substance that no part of the work was performed by the plaintiffs subsequent to February 10, 1917, except the labor charged March 27th, 28th and 30th of that year, amounting to $26.75, which he avers was tendered by him to the plaintiffs and refused. He brings that amount into court.

The tender and refusal are admitted by the reply; other allegations of the answer are denied. The Circuit Court reached the conclusion that the plaintiffs were not entitled to the lien, but decreed that they should recover the amount tendered and brought into court, without costs to either party. The plaintiffs appeal.    REVERSED. DECREE RENDERED.

For appellants there was a brief submitted by *Mr. George P. Winslow.*

For respondent there was a brief submitted by *Mr. H. T. Botts.*

BURNETT, J.—1. This proceeding was instituted under Section 7497 et seq., L. O. L., as amended by the act of February 21, 1911 (Laws of 1911, Chapter 159), as follows:

"Every blacksmith, wagon-maker, automobile repairer and machinist who has expended labor, skill and material on any chattel at the request of its owner, * * shall have a lien upon said chattel for the contract price for such expenditure, or in the absence of such contract price, for the reasonable worth of such expenditure, for the period of one year from and after such expenditure, notwithstanding the fact that the possession of such chattel has been surrendered to the owner thereof."

At common law, one performing such services in the repair or manufacture of a chattel had a lien thereupon so long as he retained possession of the goods, but the moment he gave up that custody his lien ended. It was competent for the legislative power to award a lien irrespective of possession. This statute directly declares that the persons named therein who rendered the services described, at the request of the owner of the chattel, have a lien thereupon. The concluding clause of Section 7497, ''notwithstanding the fact that the possession of such chattel has been surrendered to the owner thereof,'' does not detract from the force of the language in the earlier part of the section, awarding a lien. The foundation of the lien in all cases, whether at common law or under this statute, is the furnishing of material or labor. The retention of possession was the only means known at common law for the enforcement of the right grounded upon the things supplied or services rendered. No matter how long the person had retained possession, he would not have a lien unless he had done or furnished something for the repair or improvement of the chattel. While it retains the condition of performance of labor or supply of material as the basis of a lien, the statute does not require that the owner be utterly deprived of all charge of the chattel. Possession in the sense of exclusive custody is made a nonessential by this enactment.

2. As to the circumstances under which the work was done in overhauling the machine, the Circuit Court found substantially in accordance with the allegations of the complaint. The facts as disclosed by the testimony, fairly construed, are that in December, 1916, Pitts was engaged in logging operations on the Nehalem River, some twenty-five or thirty miles from the

city of Tillamook, where the plaintiffs had their shop.
The machine was considerably out of repair and Pitts
engaged the plaintiffs to give it a thorough over-
hauling, with the proviso that he wished to finish a
certain logging undertaking then under way and he
wanted the engine kept in sufficient running order for
that purpose as part of the contract of general refit-
ting. In pursuance of this understanding, from time
to time during the then current winter season, the
plaintiffs were called by Pitts to the logging camp to
repair the machine. On one occasion they took sun-
dry pieces of it to Tillamook, repaired them there and
afterwards reinstated them on the engine. There
were several instances of the kind and there was
a time between February 10th and the latter part of
March, when they did nothing, but on March 27th, 28th
and 30th they did more repairing for the purpose of
keeping the machine at work. Soon after the date
last mentioned, Pitts failed, sold the engine to the
defendant Schiffmann, told the plaintiffs he would have
no further use for their services and they mutually
ended their relationship at that time. Under these
conditions, the defendant Schiffmann contends that the
various repairs made during the months of December,
January and February were separate, independent
transactions, for each of which a lien could and should
have been asserted, with the consequence that the plain-
tiffs lost their right to enforce a lien upon that prop-
erty for the items furnished on February 10th and
before that, because the notice was not filed until May
2d. It is upon this theory that Schiffmann tendered
$26.75 in discharge of the lien. We think, however,
that the items of the claims of the plaintiffs were sup-
plied in pursuance of a single contract resulting in
a single demand, notwithstanding the lapse between

the February and March dates: *Pierce-Arrow Company* v. *Irwin,* 86 Or. 683 (169 Pac. 129).

3. It remains to consider whether the notice was filed so as to effectuate the lien. The enactment as amended in 1911 says:

"In order to make such lien effectual the lien claimant shall, within sixty days of the date of the delivery of such chattel to the owner thereof, or his duly authorized agent, file in the office of the county clerk of the county in which said labor, skill and materials were expended on such chattel, a lien notice. * * *"

That statute goes on to prescribe the form of the notice, and it was followed in this instance, as the record shows. The question to be determined is: What is the proper signification to be assigned to the words "sixty days from the date of the delivery of such chattel to the owner thereof?" The testimony fairly shows that this work was done in pursuance of the contract made in December and that it was continued until the relation was ended by common consent of the parties at the end of March following. As we glean from the testimony, the evident purpose of the parties was for the plaintiffs to keep the machine in running order until the logging job then on hand was completed, when the contract between them should be completed by a systematic repair of the engine. While this contract was in force the plaintiffs had in a sense a modified possession of the machine. They certainly occupied toward it a relation different from that of any stranger. They could not have been held guilty of trespass in repairing it during that time. For the purpose of mending the machine the then owner granted to them a qualified custody of it. When they mutually ended their contract the plaintiffs gave up this conventional possession of the chattel and sur-

rendered it to Pitts, which is sufficient by a fair construction of the statute to fix the date from which to reckon the sixty days prescribed within which to file a notice of lien. The law should be construed so as to give it effect as reasonably intended by the legislature. Otherwise, no one, however deserving, could ever acquire a lien upon a chattel which would be too large to remove conveniently from the owner's premises. The case of *Thornton* v. *Hallam,* 64 Or. 233 (129 Pac. 1046), is not in point here. That decision was to the effect that one who takes a contract for clearing land does not have such a possession of the tract as would support a lien in favor of his subcontractor against the fee-simple owner of the realty. It depended upon a different statute and was an effort to charge a stranger to the contract whose claim on the property was superior to that of the plaintiff, if he had any. In the instant case the right of the plaintiffs to charge the property accrued before the subsequent purchaser came upon the scene and he took it subject to the statutory burden growing out of the relation between the immediate contracting parties. Thornton sought to charge the land of a person with whom he did not contract, while the present plaintiffs are enforcing their claim against the one with whom they covenanted and are following what was his property into the possession of one who took it subject to their demand. Thornton endeavored to overcome a superior title, while the plaintiffs here are foreclosing an inferior claim.

In brief, here was a single contract under which the plaintiffs from time to time expended labor and materials upon a chattel, which gave them a lien, as the statute expressly says. Incidental to the performance of such services, they had a qualified possession of

the property sufficient for the purposes of the work, and to support subsequent proceedings under the statute. By mutual consent of the parties this relation was ended less than sixty days prior to the filing of the notice of lien. The plaintiffs thus brought themselves fairly within the beneficial provisions of the law and were entitled to enforce their lien. The decree of the Circuit Court is reversed and one here rendered according to the prayer of the complaint.

REVERSED. DECREE RENDERED.