Argued November 30, 1926, affirmed January 11, argued on rehearing April 5, former opinion sustained September 27, 1927.

## SHERIDAN R. ROSS *v.* L. J. SPANIOL et al.

(251 Pac. 900; 259 Pac. 430.)

**Bailment—Labor or Material, for Which Lien is Claimed, must be Expended on Chattel at Request of Owner, His Authorized Agent, or Lawful Possessor (Or. L., §§ 10272, 10275).**

1. Right to mechanic's lien, under Sections 10272, 10275, Or. L., requires that labor or material shall have been expended on chattel at request of owner, his authorized agent, or lawful possessor thereof.

**Bailment—Lien Law Preserves Lien Existing at Common Law Without Necessity of Lienor's Retaining Possession of Chattel and is to be Interpreted According to Principles of Common Law (Or. L., §§ 10272, 10275).**

2. Sections 10272, 10275, Or. L., were intended to preserve right to lien existing at common law, without necessity of lienor's retaining possession of chattel until compensated for work done, and to extend lien right in cases mentioned not existing at common law, and hence statute is to be interpreted in accordance with principles of common law.

---

2. See 17 R. C. L. 600.

Bailment—One Receiving Delivery of Property for Repair is Bailee
for Hire, Holding Property for Special Purpose, With General
Ownership Retained by Owners.

3. Delivery of airplane by owners to another contracting to re-
pair it is bailment for hire, whereby bailee held property in trust
for purpose of repair, and general ownership was retained by
owners.

Bailment—Delivery of Property by Owners for Repair Does not
Authorize One Making Repairs to Incur Obligations Creating
Liens on Property.

4. One receiving delivery of property for purpose of repair is not
agent of owner and has no authority to incur obligations which
might become lien on property to be repaired.

Bailment—Employees have No Lien on Airplane for Repairs Made
at Request of Employer to Whom Airplane was Delivered by
Owners Under Contract for Repair (Or. L., §§ 10272, 10275).

5. Employees, repairing airplane delivered to employer by owners
under contract for repair. are not creditors of owners or in privity
of contract with them and cannot claim mechanic's lien on chattel,
under Sections 10272, 10275, Or. L.

Bailment—Possession of Chattel for Purpose of Imposing Lien
Thereon must be Lawful and not Inconsistent With Rights of
Owner (Or. L., §§ 10272, 10275.)

6. Under Sections 10272, 10275, Or. L., lien for labor or materials
furnished to one in possession of the chattel requires possession to
be lawful, and, if possession is that of one not the owner, to be
lawful it must not be inconsistent with rights of owner.

Bailment—"Lawful Possessor" of Chattel, for Work for Which Lien
may be Claimed, Refers to One Having Authority to Contract
With Others for Repair of Chattel (Or. L., §§ 10272, 10275).

7. Under Sections 10272, 10275, Or. L., lien for work done at
request of "lawful possessor" of chattel refers to one entrusted by
owner with apparent authority to contract for repair of chattel,
and not to person contracting to do repairs, who has lien on chattel.

Bailment—Right to Lien for Work Done in Repairing Airplane,
by One Receiving Possession Only for Purpose of Repair, Does
not Extend to His Employees (Or. L., §§ 10272, 10275).

8. Person contracting for repair of airplane receives possession
only for purpose of repair, and lien for work is personal to himself
and does not extend to his employees, under Sections 10272, 10275,
Or. L.

Bailment—Person Contracting to Repair Chattel has Lien in Nature
of Pledge Which can be Created Only by Owner.

9. Lien by person receiving possession of chattel for purpose of
repair is in nature of pledge by owner which can only be created

3. See 3 R. C. L. 84.

by owner or by his authority, and not by party contracting for repairs.

**Bailment—Bailed Property Cannot be Pledged by Bailee for Purpose Inconsistent With Bailment, and Employees of Bailee have No Lien Thereon for Wages (Or. L., §§ 10272, 10275).**

10. Bailee for hire has no power to pledge bailed property for purpose inconsistent with bailment, and hence employees of bailee are not entitled to lien on chattel for wages, under Sections 10272, 10275, Or. L.

**Bailment—Employee, Repairing Property Delivered to Employer Under Contract for Repair, has Claim for Services Against Employer Alone, and not Owner.**

11. Employee, repairing property delivered to employer under contract for repair, performs work solely on credit of employer, and owner of property is liable to employer alone.

Bailments, 6 C. J., p. 1100, n. 21, p. 1128, n. 36, p. 1132, n. 96, p. 1133, n. 4, 5, 7, 13 New, p. 1136, n. 59, p. 1137, n. 70 New. Liens, 37 C. J., p. 325, n. 76.

From Multnomah: GEORGE G. BINGHAM, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Allan R. Joy.*

For respondents there was no appearance.

RAND, J.—Plaintiff and others, as employees of the defendant Woodruff, performed labor in repairing an airplane, which had been delivered to their said employer by its owners, the defendants Spaniol and Thomas, under a contract by the terms of which Woodruff agreed to make the repairs for a consideration to be paid to him. Each of said employees filed a separate notice of lien upon the airplane for their share of the labor, claiming to be entitled thereto under the provisions of Section 10272, Or. L. Plaintiff commenced this suit for the foreclosure of his

10. See 3 R. C. L. 113.

own lien and as assignee of the liens of his said co-employees. The lower court dismissed the suit and from this decree he has appealed.

Section 10272, Or. L., provides:

"Every person, firm or corporation who has expended labor, skill, or materials, including automobile tires, upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon said chattel for the contract price for all such expenditure, or in the absence of such contract price, for the reasonable worth of such expenditure for a period of one year from and after such expenditure, notwithstanding the fact that the possession of such chattel has been surrendered to the owner or lawful possessor thereof."

Section 10275, Or. L., which, being a part of the same enactment, must be construed in connection therewith, provides that:

"Every person who is in possession of a chattel under an agreement for the purchase thereof, whether the title thereto be in him or his vendor, and every other person who is in lawful possession of a chattel shall, for the purpose of this act, be deemed the owner thereof, or authorized agent of the owner. * * * "

1. It is essential under this statute that the "labor, skill or materials" for which a lien is claimed shall have been expended upon a chattel "at the request of the owner, reputed owner or authorized agent of the owner, or lawful possessor thereof," and unless performed at the request of one of the persons so designated, the right to a lien does not exist under this statute. This latter section provides that every person who is in possession of a chattel under a contract for its purchase shall, for the purpose of the act, be deemed to be the owner or authorized agent

of the owner, and also declares that "every other person who is in the lawful possession of a chattel, shall be deemed to be such owner or authorized agent of the owner." But with the exception of those contracting for the purchase of the chattel, the statute does not attempt to define what other persons may be in the lawful possession of a chattel within the meaning of the statute. If the rule of *ejusdem generis* could be applied to this statute, it is clear that a bailee for hire is not *ejusdem generis* with a conditional vendee as defined in the statute, since they do not belong to the same kind or class. It is not necessary, however, to pass upon the question of whether the doctrine of *ejusdem generis* should be applied in construing this statute.

2. As was pointed out in *McDearmid* v. *Foster,* 14 Or. 417, 423 (12 Pac. 813), "the word 'lien' had long prior to the passage of this statute acquired a settled meaning," and except as changed by this particular statute, it "is of the same nature it formerly was and the same circumstances must combine to create it." There is a clear analogy between the statute construed by the court in that case and the one now under consideration. Assuming that what was there said correctly stated the law governing the construction of that statute, then it is equally applicable to this statute. It is clear, therefore, that this statute did not intend, except so far as changed by statute, to create a lien unknown to the common law, and that it merely intended to preserve the right to a lien which existed at common law, and at the same time to dispense with the necessity of the lienors retaining possession of the chattel until compensated for the work done, as well as to extend the right to a lien in the cases mentioned which did not exist at

common law. For that reason in interpreting the
language of this statute, it should be interpreted in
accordance with the principles of the common law.

3, 4. The transaction of the delivery of the air-
plane by its owners to Woodruff under a contract,
whereby he undertook for a consideration, to put it
in repair, amounted to a bailment, and made him a
bailee for hire. As in all bailments, the bailed prop-
erty was to be held in trust and for a special object,
which in this case was for the purpose of repair.
The general ownership was retained by its owners,
and Woodruff obtained a special property in it, but
only for the specific object for which the property
had been bailed. The transaction itself created no
agency on the part of Woodruff, and unless such au-
thority is conferred by the statute, Woodruff was not
authorized to incur obligations which might become a
lien upon the airplane.

It was a principle of the common law that one who
has the lawful possession of a chattel and has ex-
pended his money or labor on it at the request of the
owner, has a lien on the chattel, and a right to retain
possession of it until his demand is satisfied, and that
in order to preserve and enforce this lien, it was
necessary for the person performing the work to re-
tain possession of the chattel until compensated, be-
cause a voluntary relinquishment by him of the pos-
session of the chattel would operate to extinguish the
lien. It was equally well settled that the lien of a
workman at common law belongs strictly to the per-
son contracting to do the work or service, and not to
the subcontractors or persons employed under him:
*Jacobs* v. *Knapp*, 50 N. H. 71; *Hollingsworth* v. *Dow*,
19 Pick. (Mass.) 228; Jones on Liens (3 ed.), § 26,
and cases there cited.

5. It was requisite to the validity of a lien at common law that the lienor should, while doing the work upon a chattel, have an independent and exclusive possession of it, either actual or constructive: *McDearmid* v. *Foster, supra;* 37 C. J., p. 325, § 33B. How far this statute was intended to change the rule last stated is unnecessary for us to decide, for in the instant case, the work for which the lien was claimed was not done at the request of the owners, but at the request of Woodruff, their employer. There was no privity of contract such as was required at common law between the owners and said employees; the latter were employed by Woodruff, and in doing this work, they obeyed his orders and looked to him for their wages. The relation of debtor and creditor as between them and the owners did not arise, and whatever custody they had in the airplane while at work upon it was the mere custody of a servant and employee engaged in work upon property belonging to or under the control of his master.

Our mechanic's lien law statute makes "every contractor, subcontractor, architect, builder or other person having charge of the construction * * the agent of the owner for the purposes of the act." This statute contains no such provision. On the contrary, it requires that to be lienable, the work or material shall be expended at the request of the "owner, reputed owner, or his authorized agent or lawful possessor thereof."

6, 7. To constitute the lawful possession of a chattel, or to make one the lawful possessor of a chattel under this statute, possession alone is not sufficient; the possession must itself be lawful, and if the possession is that of one not the owner, then to be lawful, such possession must be not inconsistent with the

rights of the owner. Obviously it was intended by this statute to confer the right to a lien for work done upon a chattel, where the work for which the lien is claimed was done at the request of either the actual owner of the chattel, or of one who while not the actual owner had been, for purposes other than that of having it repaired, entrusted by the owner with such possession and control of it as to give him apparent authority to contract with others for its repair and, in such case, to give a lien to the one contracting to do the work in reliance thereon. As so used, the words "lawful possessor," were intended to designate a person who is authorized under the statute to have the work done, but not a person who himself has contracted to do the work. In this respect, the statute was an enlargement of the common-law right to a lien, for at common law, it was only when the work was done at the request of the owner that the lien would lie.

8, 9. In the instant case, Woodruff was the person who had contracted to do the work, and who, if not paid, was entitled to a lien for his own services and for those performed by his employees. While performing the work, he was in possession of the airplane, but his possession was only for the purpose of performing his contract. Possession by him for any other purpose would be inconsistent with the rights of the owner, and would not be a lawful· possession. To make the repairs, it was necessary for him either to perform the labor himself or to employ others to perform it. But he was not authorized, under his contract, to enter into any contract which would have the effect of creating a lien upon the airplane in favor of any third party. As between him and the one he had contracted with, there was a privity of

contract, but as between his employees and the one he had contracted with, there was no privity of contract. He being the one who had made the contract to repair the airplane, the right to a lien was personal to himself, and did not extend to his employees. This lien, as at common law, is in the nature of a pledge by the owner of the property to the party with whom he contracts for labor to be bestowed upon it, and like all pledges, can only be created by the owner, or by his authority. A party, being in the lawful possession of a chattel and contracting for its repair, is by this statute vested with authority to make such contract, but a party who has contracted to make the repairs has no power under this statute, to pledge the property in his custody. See *Jacobs* v. *Knapp, supra;* Story on Bailments, § 440, *Hollingsworth* v. *Dow, supra.*

10. Bailees for hire have no power to pledge the bailed property for purposes inconsistent with the bailment. This was the rule at common law, and we think it has not been changed by this statute. For Woodruff to pledge this property for the wages of his employees without the authority of the owners, would be in violation of his contract, and would be making an unlawful and unauthorized use of the property, for he was not entrusted with it for any such purpose, and had no such authority over it. As to the employees of such bailee, we think the statute was not intended to change the common-law rule, and that they are not entitled to a lien for their wages. We think the authorities cited fully sustain this view.

It is evident from the reading of this statute that its object and purpose was to change the common-law rule so as not to require the lienor, in order to preserve his lien, to retain possession until compensated for his

work, and to allow a lien, notwithstanding the fact that upon completion of his contract he had returned the chattel to the person by whom he had been employed, and also to provide an additional method for the enforcement of the lien. It was also the intention of the statute to authorize one in the lawful possession of a chattel to contract for work to be done thereon but not after he had himself contracted to do the work. These, we think, were the only changes in the law that the statute intended to make.

11. To construe this statute to mean that, where the owner or lawful possessor of an airplane, automobile, engine, machine or other like property delivers it to a machine-shop, garage or any other place for repairs, and contracts with the proprietor thereof for its repair, every employee of the proprietor who does work upon it at the request of the proprietor can have a lien for his share of the work, would constitute such a radical change in the law, and would cause so much public inconvenience, litigation and expense, that a statute ought not to be given that effect unless its language clearly requires it. In such case, the servant performs the work upon the sole credit of the master, and for his work and that of all other persons employed by the master the owner is liable to the master alone. Upon payment being made to the master, the owner's entire legal obligation is discharged, while if the owner fails to pay, the statute gives to the master a lien for his own and the services of his employees. There is nothing in the language of the statute indicating a legislative intent to confer upon the servants and employees of the master the right to separate liens for their individual work.

122 Or.—28

The lower court held that the liens of these servants and employees of Woodruff were invalid because not authorized by the statute, and with this conclusion we agree. The decree must therefore be affirmed, but without costs to either party upon this appeal.        Affirmed.

McBride and Coshow, JJ., concur.

BURNETT, C. J., Dissenting.—This is a suit brought to foreclose a lien on a biplane. After alleging that the defendants, Spaniol and Thomas, were copartners and owners of a certain "Curtiss J. N. 4 Biplane," the complaint goes on to state that the defendants, Spaniol and Thomas, made a contract with the defendant Woodruff for doing and performing work and labor necessary in remodeling the biplane; that, in pursuance thereof, the firm turned over to Woodruff, about January 20, 1924, the actual possession of the biplane and that he took and received the possession thereof;

"That at the special request of the said Chas. S. Woodruff, as contractor as above alleged, plaintiff, at Portland, Oregon, performed work and labor, as a mechanic and helper, in and about the remodeling and repairing of the said biplane, between the 18th day of February, 1924, and the 24th day of March, 1924, inclusive, * * "

for which work and repair, after deducting offsets, there was due a balance of $98 as the reasonable value of the work; that each of the defendants has neglected and refused to pay the same, and that the work was finished March 24, 1924. The plaintiff's first pleading then continues, reciting the making and filing of his verified claim in the office of the

county clerk and recorder of Multnomah County, Oregon. Other details follow, culminating in this suit. Five other causes of suit are alleged in behalf of other parties for repair on the biplane which had been assigned to the plaintiff.

The answer admits the partnership of Spaniol and Thomas, the contract with the defendant Woodruff for the remodeling and repairing of the airplane, and that "pursuant to said contract said airplane was delivered into the actual possession of said C. S. Woodruff for the purpose of remodeling and repairing same." Otherwise the complaint is denied *in toto.* Affirmatively defendants, Spaniol and Thomas, answer that Woodruff was conducting a school of airplane mechanics in Portland, Oregon; that plaintiff applied for admission as a student therein and paid Woodruff the required tuition and was thereupon enrolled in said school and received instruction in the principles of airplane mechanics and construction, and finally that all work and labor performed by plaintiff at the instance of Woodruff, in said school, or upon the airplane described in plaintiff's complaint, was incidental to and constituted a necessary part of his course of instruction in said school, and was performed by him with the distinct knowledge that he was not employed in the school, nor would he receive any pay for any work or labor performed by him upon said airplane in said school. All this was traversed by the reply. The defendant Woodruff made no appearance or defense. The Circuit Court entered a decree for the defendants, dismissing the suit with costs, and the plaintiff has appealed.

The theory of the Circuit Court, as reflected in the findings of fact and conclusions of law, was that the

plaintiff and his assignors, while they performed work and labor on the biplane, did so at the instance and request of the defendant Woodruff and that

"Neither the plaintiff nor his assignors had the possession of said airplane at any time, and at most, they were only employees, if not students of C. S. Woodruff, and at all times the actual possession of said airplane was in C. S. Woodruff while it was being so remodeled, rebuilt and repaired, and was, by C. S. Woodruff, delivered to the defendants, Spaniol and Thomas, as fully completed on or about the 26th day of March, 1924, and the same was not, at any time, either in the actual or implied possession or control of such lien claimants."

The statute under which this suit was instituted reads, so far as applicable, as follows:

"Every person, firm or corporation who has expended labor, skill or materials, including automobile tires, upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon said chattel for the contract price for all such expenditure, or in the absence of such contract price, for the reasonable worth of such expenditure for a period of one year from and after such expenditure, notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof." Or. L., § 10272.

The following section provides for making the lien effectual by the claimants filing a verified claim in writing in the office of the county clerk of the county in which such labor, skill and material were expended. No question is made about the sufficiency of the notice in this case.

In Section 10275, Or. L., it is said that:

"Every person who is in possession of a chattel under an agreement for the purchase thereof, whether the title thereto be in him or his vendor, and every other person who is in lawful possession of a chattel shall, for the purpose of this act, be deemed the owner thereof, or authorized agent of the owner, * * "

No contest is made as to the correctness of the procedure to enforce the lien. The whole case is made to hang on the question of possession to the effect that, inasmuch as plaintiff did not have actual manual possession of the plane exclusive of other people, except so far as it may rest upon his actual labor upon the chattel, he is not entitled to a lien. In analogy to the mechanic's lien law, whereby a person working for a contractor or a subcontractor on a building at the instance of either of the latter, although possibly unknown to the actual owner of the building, may secure a lien thereon, the statute under which this suit is instituted declares that:

"Every person * * who has expended labor * * upon any chattel * * at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon said chattel * * notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof."

In *Hiner* v. *Pitts,* 89 Or. 602 (175 Pac. 133), the plaintiffs were machinists whose shop was in the City of Tillamook. Pitts, the defendant, was engaged in logging operations some twenty-five or thirty miles distant from the shop. The defendant engaged the plaintiffs to keep that logging outfit in repair and working order and from time to time they went out into the woods and repaired the machinery there. Sometimes they took parts of it to their shop in Tilla-

mook, mended them and took them out again and installed them in the machinery, thus keeping the plant in operation. It was there held that such conditions gave rise to a lien in favor of the plaintiffs although the machinery remained in the custody of the defendant. Distinguishing between a common-law lien on a chattel, requiring the claimant to retain possession of the same, and the statutory lien authorized by the enactment above quoted, it was there said:

"At common law, one performing such services in the repair or manufacture of a chattel had a lien thereupon so long as he retained possession of the goods, but the moment he gave up that custody his lien ended. It was competent for the legislative power to award a lien irrespective of possession. This statute directly declares that the persons named therein who rendered the services described, at the request of the owner of the chattel, have a lien thereupon. The concluding clause of section 7497, 'notwithstanding the fact that the possession of such chattel has been surrendered to the owner thereof,' does not detract from the force of the language in the earlier part of the section, awarding a lien. The foundation of the lien in all cases, whether at common law or under this statute, is the furnishing of material or labor. The retention of possession was the only means known at common law for the enforcement of the right grounded upon the things supplied or services rendered. No matter how long the person had retained possession, he would not have a lien unless he had done or furnished something for the repair or improvement of the chattel. While it retains the condition of performance of labor or supply of material as the basis of a lien, the statute does not require that the owner be utterly deprived of all charge of the chattel. Possession in the sense of exclusive custody is made a nonessential by this enactment."

Later, in *Tulloch* v. *Cockrum,* 115 Or. 601 (236 Pac.
1045), the court was discussing the same statute and,
citing with approval *Hiner* v. *Pitts, supra,* it was
there said:

" * * It is certain that the existence of the lien
does not depend upon the question of possession
(*Hiner* v. *Pitts,* 89 Or. 605, 175 Pac. 133), as section
10272, Or. L., provides for a lien 'notwithstanding
the fact that the possession of such chattel has been
surrendered to the owner.' "

Both these cases, *Hiner* v. *Pitts* and *Tulloch* v.
*Cockrum,* were heard in bank by the full court and
were decided without any dissent.   It was within the
power of the legislature to modify the common-law
rule about retaining possession of a chattel upon
which a lien was claimed for the repair or manufac-
ture thereof and to dispense with such possession as
an element supporting the enforcement of the lien.

In *Jacobs* v. *Knapp,* 50 N. H. 71, an attempt was
made by one who labored on some chattels belonging
to the defendant but who had no contractual relation-
ship with that defendant to recover for his services.
The suit had a double aspect; one was that plaintiff
sought to assert and foreclose a lien upon the chattel
without having retained possession of it and the
other was that he had attached the property to pro-
vide for the satisfaction of his claim.   As to the first
contention, the court very properly held that the stat-
ute of New Hampshire, relating to liens in such in-
stances, did not provide for any notice to the original
owner of the property; hence the proceeding was an
attempt to divest the actual owner of his rights with-
out due process of law or having notice of his day in
court and consequently the statute was unconstitu-
tional.   On the other hand, not having any contract

with the actual owner or any relation with him out of which a debt would arise in favor of the defendant and against the owner, there was no foundation for an attachment. Soon after this case was decided the New Hampshire statute was amended so as to provide for filing a notice of lien, thus overcoming the principal objection discussed in the opinion.

In *Hollingsworth* v. *Dow,* 19 Pick. (Mass.) 228, cited by the defendants, the court treated solely of a common-law lien depending on the retention of possession by an original contractor.

In *McDearmid* v. *Foster,* 14 Or. 417 (12 Pac. 813), the court discussed and made its decision dependent upon a statute then in existence authorizing the person repairing the article of personal property to "hold and retain possession of the same until such just and reasonable charges shall be paid." To all intents and purposes, we have already decided in *Hiner* v. *Pitts* and *Tulloch* v. *Cockrum* that the question of possession is not controlling under our present statute. It provides for notice to the original owner by filing a claim of lien in the public records, thus imparting notice to all concerned and obviating the rule upon which the New Hampshire case of *Jacobs* v. *Knapp* was decided. The plaintiff here is "every person." He comes strictly within the terms of the statute. He is not a slave or serf whose personality or identity is lost in the thrall of his servitude. The statutory term "every person" is universal in scope and makes the plaintiff capable of asserting a lien.

It is admitted in the pleadings, alleged by the complaint as well as by the answer, that the chattel was delivered into the possession of Woodruff. Wood-

ruff, therefore, was "the lawful possessor thereof," under the terms of Section 10272, while Section 10275, Or. L., expressly makes such "lawful possessor" the authorized agent of the original owner for the purposes of this act, viz., for the purpose of establishing a lien on the chattel in question. The possession of Woodruff was lawful. Both parties admit it. The statute makes no further qualification of that possession than that it be lawful. We have no right to construe or legislate any further limitations or restrictions upon that possession. Woodruff comes within the terms of these two sections as authorized to request the performance of the labor and services in the repairing of the chattel in question. Such statutes are made to afford a remedy for the man who works with his hands and by all the modern authorities are to be construed liberally to effect their purpose. Often it is that such men have no means of retaining actual manual possession of the machinery or other property upon which they have expended their labor. The statute provides this remedy for them and creates a lien under certain circumstances detailed in its terms without including the requirement of retaining possession. The owner has his notice given him, his day in court. On that score the statute is quite as worthy of enforcement as the general mechanic's lien law providing for maintaining a lien upon a building upon which a laborer has worked. If actual possession by the claimant were enforced in such instances, it would defeat the harvesters' lien (Or. L., § 10230); or the loggers' lien (Or. L., § 10236), or the horseshoers' lien (Or. L., § 10252), or the sheep-herders' lien (Or. L., § 10259), in each of which the enactment awarding the lien is

in substantially the same terms as the one in question and in none of which is possession by the claimant at all intimated. In all such instances retention of possession is practically impossible for the class of laborers for whose benefit the laws have been enacted. The design of the statute is to make the filing of notice of claim subserve the reason and purpose of the common-law possession, viz., to inform all persons interested that the claimant has not been paid for his labor. How can a cook in a logging camp retain possession of a lot of logs? Is it practicable for a sheep-herder, who ordinarily has only his horse and a dog or two and no feed at the end of the grazing season, to keep possession of a thousand head of sheep? Yet further: Quite generally such claims are made by individuals each in his own right. Many of them are often found working on a machine at the same time and each is entitled to a lien. If continued possession is essential to the validity of a lien under our statute, only one laborer could assert a lien, for it is impossible for a number of persons claiming in severalty to maintain exclusive possession of a single chattel at one time.

The testimony abundantly supports the allegations of the complaint as to the performance of the labor in the instant case and that it was done at the request of a person who is admitted to be the lawful possessor of the chattel and hence the agent of the owner for that purpose. Unless we can say that the plaintiff is not "every person" and that Woodruff, notwithstanding the averments and admission to the pleadings, was not a "lawful possessor thereof," we should award a decree for the plaintiff according to the prayer of his complaint. The common-law possession is not a factor in the case. Its assertion

emasculates the statute and defeats its beneficent purpose.

To conclude: We have present all the requisite actors contemplated by the statute. The plaintiff is that "every person" who "has expended labor" upon a chattel. Woodruff is admittedly the "every other person who is in lawful possession of the chattel." The scope of his authority as defined by the statute, which we cannot gainsay or restrict, is that "for the purpose of this act, he shall be deemed the owner thereof or the authorized agent of the owner thereof." Equipped with this statutory authority, Woodruff's request to the plaintiff to do the work was as binding upon Spaniol and Thomas, the primary owners of the biplane, as if they had made it in person. The rendition of the services followed. They are the foundation of the lien. The reason of the common-law possession, that of giving continuous notice of the claim, is subserved by filing notice of the claim for public record.

The decree of the Circuit Court should be reversed and one here entered in favor of the plaintiff according to the prayer of his complaint.

---

Former opinion sustained on rehearing September 27, 1927.

## ON REHEARING.

(259 Pac. 430.)

For appellant there was a brief and oral argument by *Mr. Allan R. Joy.*

No appearance for respondents.

PER CURIAM.—Since our former decision, a rehearing has been granted and the cause has been re-

argued. After a consideration by all of the members of the court, the majority of the court are still of the opinion that the majority opinion rendered upon the first hearing correctly construed the statute upon which the suit was based and correctly applied the law to the facts of the case.

For these reasons the decree must be affirmed, but without costs to either party upon the appeal.

FORMER OPINION SUSTAINED.