Argued October 18, reversed with directions October 24, 1951

# YELLOW MANUFACTURING ACCEPTANCE CORP. *v.* BRISTOL

236 P. 2d 939

26

*Dudley C. Walton* argued the cause for appellant. On the brief were Davis, Walton & Richmond, of Roseburg.

No appearance for respondent.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

## TOOZE, J.

Yellow Manufacturing Acceptance Corporation, a Delaware corporation, duly authorized to transact business in the state of Oregon, as plaintiff, brought action in replevin against Chester Bristol, as defendant, to recover possession of a certain motor truck and trailer. The defendant answered and, after denying the material allegations of the complaint, pleaded affirmatively as a first defense his right to possession of the property by virtue of a possessory lien for work, labor, and materials furnished on said truck at the special instance and request of the owner thereof, one Donald Owens, and as a second defense, his right to possession by virtue of a lien notice filed against said truck and trailer in the lien records of Douglas county, Oregon, covering such work, labor, and materials furnished on said truck in the repair thereof at the special instance and request of the owner. The amount claimed due was $387. Then, by what is labeled a ''First Cross Complaint'' in equity, defendant pleaded his alleged lien and prayed for the foreclosure thereof. The matter was tried to the court as a suit in equity. The court

found that defendant had a possessory lien, but refused to foreclose the same for the reason that Donald Owens, the owner, had not been made a party to the litigation; the court entered a decree dismissing the suit. Plaintiff appeals.

■ The jurisdiction of the trial court to hear the matter as a suit in equity was not challenged by either party, neither there nor here. Inasmuch as we propose to dispose of this case upon the merits, we deem it unnecessary to discuss in detail the jurisdictional question. However, we do not wish to be understood as approving the procedure in this case. It is noted that defendant's first affirmative defense, if true, is a complete defense to plaintiff's cause of action; and his second affirmative defense, if true, might, under the circumstances hereafter discussed, also be a complete defense. Obviously, the purported cross-complaint does not present a situation "where defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, *and material to his defense,*" which is necessary to equitable jurisdiction. (Italics ours.) *Jacobson v. Wheeler et al.,* 191 Or. 384, 230 P. 2d 550; *Hamilton v. Hamilton Mammoth Mines,* 110 Or. 546, 223 P. 926; *Haaland v. Miller,* 67 Or. 346, 136 P. 9; § 9-102, O.C.L.A.

On or about May 6, 1949, one Donald Owens purchased from Ray Buckley Motors at Roseburg, Oregon, one GMC 1940 motor truck and one Wentworth & Irwin 1940 trailer for the sum of $4,209.86. On May 10, 1949, Owens executed and delivered to Ray Buckley Motors his certain chattel mortgage covering this truck and trailer, as security for payment of the purchase price thereof. This chattel mortgage contained the usual provisions for repossession of the truck and

trailer by the mortgagee in the event of default on the part of the mortgagor. Ray Buckley Motors immediately assigned this chattel mortgage to plaintiff. The mortgage was duly filed in the official records of Douglas county on May 10, 1949, pursuant to law.

Between May 10, 1949, and May 22, 1949, defendant Bristol, doing business under the assumed name of B & C Welding, at the special instance and request of Donald Owens, performed labor upon and furnished necessary materials for the repair of said truck. The total reasonable value of such labor and materials was $687, of which sum Donald Owens paid $300, leaving a balance due defendant of $387.

Owens was engaged in hauling logs, using this truck and trailer for the purpose. When defendant completed the repairs, and on or about May 22, 1949, he permitted Owens to take the truck and trailer for the purpose of carrying on his work of hauling; thereafter, Owens made continual use thereof in his work.

Explaining the circumstances connected with Owens' use of the truck and trailer when the repairs had been completed, defendant testified:

"Q. Now, after the work was performed, did you have any agreement with Mr. Owens in regard to letting him have the truck?

"A. Yes, I told him that I couldn't let him have the truck and then he said, 'Well, if he could take it out and do some work with it, why, I would be able to pay you.' And so we talked it over and I said I guessed that would be all right but he would have to bring the truck back there and keep it there so I would know just what the score was on it and I wouldn't have any trouble in trying to get it back and that was the agreement that we had together.

"Q. Now, after you let him have the truck, did he go to work with it?

"A. Yes, he did.

"* * *

"Q. Did you tell him that he could have it only —what was the actual agreement between you and Owens?

"A. Well, it was just if he didn't make up his payments, why *I was to get the truck*—that is, *to take possession of the truck* and if he didn't work with it, why the truck was to be left there; that is all; so that I would be sure and have my money protected." (Italics ours.)

Defendant further testified on direct examination:

"Q. Now, you say this work started about the 6th of May. How long did you work on the truck at that time?

"A. Well, off and on some 15 or 20 hours.

"Q. Well, when did that particular job get done—when was it completed?

"A. Around the 22d or 23rd.

"Q. Of May?

"A. Yes.

"Q. What did you do with the truck then?

"A. That is when Donald Owens and I made the agreement and he took the truck out to go to work with it.

"Q. Then from time to time as it was brought back and there was this other work done on it, was it?

"A. Yes, sir."

Upon cross-examination defendant testified:

"Q. Now, it is a fact, isn't it that between the times that you were doing the work on this truck

after the 20th of May, Donald Owens was using the truck to work with?

"A. Yes, sir.

"Q. He would bring it back to your place for other work to be done, is that right?

"A. Yes, he did.

"Q. And you also stated, I believe, that it was about the 10th of July that you made and entered into this agreement, whatever it was, with Donald Owens about his bringing the truck in in the event he didn't pay you, is that right?

"A. No, that isn't right. *It was about the 20th of May that that agreement was made.*

"* * *

"Q. Isn't it a fact, Mr. Bristol, that you filed or executed a non-possessory lien notice or non-possessory lien on chattel on the 6th day of July, 1949?

"A. Yes, I went to Mr. Kabler and had him put a lien on the truck.

"Q. And at that time, that was the day that you gave possession back to Mr. Owens, wasn't it?

"A. No, I never gave him possession especially that day, no.

"Q. That day was the day that you completed some work on the truck, wasn't it?

"A. No, I don't know as I worked on the truck that day at all.

"Q. The truck hadn't been in your shop that day?

"A. Yes, it was there.

"Q. When did Mr. Owens take it out after that?

"A. Three or four days later.

"Q. After you had prepared and executed this notice of lien?

"A. Yes, I believe it was.

"Q. *At that time you were relying on your notice of lien* you were going to file, isn't that right?

"A. Well, yes, *I had relied on that.* I don't know too much about the law and that is what I thought should be done.

"Q. *You weren't attempting to hold possession of this truck to force Mr. Owens to pay the claim?*

"A. *Not at that time, no.*

"Q. *You were going to rely on Mr. Owens to pay you the bill?*

"A. *Yes, sir, to keep up with our agreement, yes.*

"Q. *You were going to rely on his honor to pay you the bill rather than holding possession of the truck?*

"A. *Yes, sir, you might say that was it or his agreement to do that, yes.*

"Q. *In other words, his agreement to pay you?*

"A. *Yes.* (Italics ours.)

The lien notice mentioned by defendant is that alleged in his second affirmative defense, and it was filed in Douglas county on July 16, 1949.

Upon conclusion of the trial the court entered of record its findings of fact, conclusions of law, and decree as follows (omitting formal parts):

"FINDINGS OF FACT
and
CONCLUSIONS OF LAW

"I.

"That the plaintiff is a corporation organized and existing by virtue of the laws of the State of Delaware and is licensed to do business in the State of Oregon.

## "II.

"That Donald W. Owens is the owner of one GMC truck, Model Number ACR 753 Log, Motor Number 451372, Chassis Number 003, and one Wentworth & Irwin 1940 Trailer, Model Number Log, Chassis Number S13017.

## "III.

"That on the 10th day of May, 1949, said Donald W. Owens gave a chattel mortgage on said truck and trailer to Ray Buckley Motors for the sum of $4,209.86.

## "IV.

"That said Ray Buckley Motors assigned said mortgage to the plaintiff and guaranteed the payment thereof, and that the plaintiff is now the owner and holder of said mortgage.

## "V.

"That immediately after the purchase of said truck and trailer and the giving of said mortgage, said Donald W. Owens delivered the same to the defendant for repair and that the defendant repaired said truck and trailer and furnished materials in performing said work, and that there is now due, owing and unpaid on account of said work, labor and materials the sum of $387.00.

## "VI.

"That the defendant retained possession of said truck and trailer as security for the payment of said sum of $387.00 and now holds possession thereof and has a possessory lien thereon for said sum.

## "VII.

"That the defendant permitted said Owens to have temporary custody of said truck and trailer for the purpose of hauling logs but did not surrender his lien thereon.

"And, as conclusions of law from the foregoing facts, the Court finds that

"I.

"By permitting said Owens to have the temporary custody of said truck and trailer, the defendant did not surrender possession thereof to said Owens but retained a possessory lien thereon to secure the payment of the sum of $387.00 on account of work, labor and materials expended in the repair of said truck and trailer.

"II.

"That the plaintiff is not entitled to immediate or any possession of said truck and trailer but that the defendant is entitled to the possession of said truck and trailer as security for the payment of said balance due him.

"III.

"That the defendant is not entitled to a foreclosure of his said lien for the reason that said Donald W. Owens is not and has not been made a party to this suit.

"IV.

"That the defendant is not entitled to attorney's fees in this suit for the reason that he has no contract providing for the payment thereof and for the further reason that Sec. 67-501 O.C.L.A. does not provide for the payment of attorney's fees.

"V.

"That the defendant is entitled to a decree dismissing plaintiff's complaint and this suit and to his costs and disbursements herein incurred.

"DECREE

"Based upon the findings of fact and conclusions of law filed herewith, it is hereby ORDERED, ADJUDGED and DECREED that this suit be and the same is hereby dismissed and that the defendant recover of and from the plaintiff his costs and disbursements herein incurred."

There is no dispute between the parties but that the

conditions of the chattel mortgage were breached by Owens, and that plaintiff was entitled to possession of the truck and trailer, unless defendant, under the claims he asserted, had a lien with priority over that of plaintiff.

2. Section 67-501, O.C.L.A., in part, provides:

"Any person who shall make, alter, repair or bestow labor on any article of personal property at the request of the owner or lawful possessor thereof, shall have a lien on such property so made, altered or repaired, or upon which labor has been bestowed, for his just and reasonable charges for the labor he has performed and material he has furnished, and *such person may hold and retain possession of the same until such just and reasonable charges shall be paid.*" (Italics ours.)

This statute is declaratory of the common-law right to a possessory lien and must be interpreted in accordance with its principles. *Tulloch v. Cockrum,* 115 Or. 601, 236 P. 1045; *McDearmid v. Foster & Co.,* 14 Or. 417, 12 P. 813.

Section 67-601, O.C.L.A., provides:

"Every person, firm or corporation who has expended labor, skill or materials, including automobile tires, upon any chattel or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon said chattel for the contract price for all such expenditure, or in the absence of such contract price, for the reasonable worth of such expenditure for a period of one year from and after such expenditure, *notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof.*" (Italics ours.)

Sections 67-602 and 67-603, O.C.L.A., contain pro-

visions respecting the form and contents of lien notice and the time for filing the same in perfecting the lien provided for in § 67-601. Section 67-604, O.C.L.A., in part, then provides:

> "* * * and the lien of every person, firm or corporation as provided in section 67-601, shall be superior to and preferred to the rights of the person or persons holding the title thereto, or any lien thereon antedating the time of the expenditure provided in section 67-601 by such lien claimant; provided, however, that the lien filed under the provisions of sections 67-601 and 67-602 *shall only have such priority over a chattel mortgage* duly recorded prior to the date of the expenditure claimed under the lien *while and during the period said lien claimant retains possession of the chattel, and not otherwise;* and provided further, that no lien for automobile tires shall have priority over such recorded chattel mortgage." (Italics ours.)

■ The lien created by § 67-601, O.C.L.A., is entirely a creature of statute and extends the common-law possessory lien. Under the provisions of this statute it is unnecessary for the lienor to retain possession of the chattel until he is compensated for his work, thereby extending the right to a lien in the cases mentioned, which did not exist at common law. *Ross v. Spaniol et al.,* 122 Or. 424, 251 P. 900, 259 P. 430; *McCann v. Oregon Scenic Trips Co.,* 105 Or. 213, 219, 209 P. 483.

■ Though this statute should be liberally construed (*Coast Engine & Machine Works v. Barbee,* 130 Or. 159, 279 P. 264), nevertheless, lien claimants must not only strictly comply with the statute, but must also bring themselves within its terms. *Covey Motor Car Co. v. Kliks,* 111 Or. 394, 225 P. 1097; *McCann v. Oregon Scenic Trips Co.,* supra.

It will be observed that the statute expressly provides that such a lien shall have priority over a chattel mortgage duly recorded prior to the date of the expenditures for which the lien is claimed only "while and during the period said lien claimant retains possession of the chattel." In other words, as against a prior chattel mortgage lien, the lien claimant loses his right of priority if and when he surrenders possession of the chattel.

Section 68-205, O.C.L.A., as amended by ch. 347, Oregon Laws 1945, provides, in part, as follows:

"* * * Unless otherwise provided by law, any chattel mortgage of any personal property shall have priority over any lien created under the laws of this state which is subsequently filed or recorded in the office of the county clerk or recorder * * *; provided, however, that anyone who expends skill, labor or materials, excluding automobile tires, accessories and supplies, upon any chattel, shall have a *prior possessory lien* over such mortgage lien, and *whenever such possessory lien is relinquished and credit extended,* then said mortgage lien shall have and retain priority." (Italics ours.)

■ Considering the provisions of § 68-205, O.C.L.A., in connection with the proviso contained in § 67-604, it is clear that the type of possession necessary to give a lien claimant priority over a chattel mortgage lien is that which is required to establish and maintain a possessory lien at common law, and as contemplated by § 67-501.

■ It follows, therefore, that retention of possession of the truck and trailer by defendant is a condition precedent and absolutely essential to a right of priority over plaintiff's chattel mortgage, whether defendant claims under his filed lien notice or under his posses-

sory lien. The question here is not whether defendant had a lien, but whether such lien as he did have had priority over plaintiff's claim.

█ At common law, artisans, tradesmen, mechanics, and laborers, who received property for the purpose of mending, repairing, and improving its condition for hire, had a possessory lien on such property until the reasonable charges and expenses thereon were paid. But it is indispensable to the existence of a common-law lien that the party who claims it should have and retain an independent, exclusive, and continuous possession of the property; the right to the lien is based directly upon such possession. *Ross v. Spaniol et al.,* supra; *McDearmid v. Foster & Co.,* supra; 53 C.J.S., Liens, 853, § 8; 33 Am. Jur., Liens, 426, § 17; 17 R.C.L., Liens, 601, §§ 8 and 9.

In 33 Am. Jur., Liens, 426, § 17, it is stated:

"Since the right to a common lien is based directly upon the idea of possession, it is indispensable that the party claiming it have an independent and exclusive possession of the property. Although there is authority for the view that the possession may be either actual or constructive, it has been said that the lien can exist only when the creditor has the actual possession of the goods on which the lien is claimed."

In 53 C.J.S., Liens, 853, § 8, the following rules are set forth:

"Since a common-law lien is a mere right to retain possession of personalty until some debt is satisfied, * * * ordinarily it is necessary to the existence of such a lien that claimant shall have possession, actual or constructive, of the property, and that such possession be independent and exclusive. *It is also generally essential, in order to preserve the lien, that the lienor's possession be*

*continuous, although continued possession is essential only as between the lienor and third persons;* as between the immediate parties the lien may continue after a change of possession." (Italics ours.)

■■ A common-law lien is lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches, and such a lien cannot be restored thereafter by resumption of possession. However, the possessory lien is not necessarily waived or destroyed as between the parties where there is an intention to preserve the lien, the lienholder only conditionally parting with the property, as where by special agreement he allows the owner to take the property into his possession without prejudice to the lien. But such a surrender of possession under such an agreement will destroy the lien as to third persons. 53 C.J.S., Liens, 864, § 17 d. (3). See also *Weber Implement & Automobile Co. et al. v. Pearson,* 132 Ark. 101, 200 S.W. 273, L.R.A. 1918D 327, and note; *Clarksburg Casket Co. v. Valley Undertaking Co.,* 81 W. Va. 212, 94 S.E. 549, 3 A.L.R. 660; 8 C.J.S., Bailments, 297, § 35 d.

In *Rehm v. Viall,* 185 Ill. App. 425, in the abstract of decision it is stated:

"The common-law lien of a mechanic or artisan on a chattel can be asserted against a third person only when the property is retained in the actual and continuous possession of the lien claimant, his agent or servant."

In *Alexander v. Mobile Auto Co.,* 200 Ala. 586, 76 So. 944, 946, the Supreme Court of Alabama, after stating the proposition that there can be no common-law lien without a continuous possession of the property repaired, said:

"This common-law right to retain the property until the lien is discharged is waived or lost by a release of the property without enforcement. This rule does not authorize the artisan or machinist to thereafter retake the property and hold it under common-law right. Such a course was not sanctioned by the immemorial custom now relied on by plaintiff, and would easily invite breaches of the peace."

See also *Thourot v. Delahaye Import Co.*, 125 N.Y.S. 827, 69 Misc. 351.

■ Priority of a possessory or nonpossessory lien over that of a chattel mortgage is not lost where the property is taken from the actual possession of the lien claimant *without his consent* by force or fraud, or where the property is taken from him involuntarily, as by a replevin action. 53 C.J.S., Liens, 865, § 17 d. (3). But in the absence of some such exceptional circumstances, we hold that actual, continuous, and exclusive possession by the lien claimant, his agent or servant, is necessary to preserve the priority of his lien over that of a prior chattel mortgage, whether his lien be a possessory lien under § 67-501, O.C.L.A., or a non-possessory lien under § 67-601, O.C.L.A.

■ When defendant surrendered possession of the truck and trailer to Owens, the owner, upon completion of the repairs, and permitted Owens thereafter to use them in the business of hauling logs for hire, his lien's priority insofar as plaintiff's rights are concerned was completely lost and destroyed and could not be revived. The agreement between defendant and Owens, as testified to by defendant to the effect that defendant was not to lose his possessory lien right by reason of such surrender of possession, though it may have been binding as between the parties, was wholly ineffective

for the purpose of preserving the priority of such lien over that of plaintiff, a third party. Further, this surrender of actual possession by defendant to Owens was just such a surrender of possession as is contemplated by and provided for in § 67-601, O.C.L.A.

■ Moreover, it appears from defendant's testimony, as hereinabove quoted, that, in lieu of his possessory lien, defendant substituted the promise of Owens to pay the debt. This amounted to a relinquishment by defendant of his possessory lien and the extension of credit. § 68-205, O.C.L.A. Owens actually paid $300 of the debt from the earnings of the truck.

■ Furthermore, defendant admitted as a witness that he was relying on his lien notice and was not "attempting to hold possession of this truck to force Mr. Owens to pay the claim." In other words, he was depending upon the nonpossessory lien filed pursuant to the provisions of § 67-601, O.C.L.A., and not upon a possessory lien under the provisions of § 67-501, O.C.L.A. He, therefore, subjected himself to the proviso contained in § 67-604, O.C.L.A., which gave him priority over the chattel mortgage lien only so long as he retained actual possession of the truck and trailer.

■ The findings and conclusions of the trial court to the effect that defendant had a possessory lien with priority over plaintiff's lien are contrary to the undisputed facts in the case and the law. The trial court sought to draw a distinction between "custody" and "possession," finding that Owens had the custody, but not the possession, the possession remaining in defendant.

It is true that, in many cases, legal possession may be, and remain, in one within the meaning of the law, while actual custody is in the hands of another.

But in the instant case the distinction between "custody" and "possession" in the respects noted is wholly immaterial.

■ At the outset we observed that defendant's cross-complaint did not present a situation where he was entitled to relief, arising out of facts requiring the interposition of a court of equity, *and material to his defense in the law action,* which is necessary to equitable jurisdiction. However, the parties submitted themselves to that jurisdiction without objection, and the case was tried upon the theory that the court did have jurisdiction in equity. The court heard all the evidence and determined all the issues, including those raised by the complaint and the affirmative defenses pleaded. We cannot say that the subject was "wholly outside of equity's jurisdiction," because the foreclosure of a lien is of equitable cognizance. *Ward v. Town Tavern,* 191 Or. 1, 228 P. 2d 216, 233.

Neither party demanded a jury trial in the trial court, nor is such a demand made here. Defendant, having invoked equitable jurisdiction, is in no position to question it, nor has he done so. Plaintiff makes no complaint about the jurisdiction exercised. Its only complaint is that the trial court erred in concluding that defendant held a possessory lien upon the truck and trailer with priority over that of the chattel mortgage.

■ In 31 Am. Jur., Jury, 591, § 46, the rule is stated:

"Generally, failure to challenge the jurisdiction of equity waives a right to jury trial. * * *

"The right to have a case brought in equity transferred to law or to the law side of the court, and there tried by a jury, may be waived."

See also 31 Am. Jur., Jury, 589, § 43; 3 Am. Jur., Appeal and Error, 496, § 929.

■ The record before us convincingly supports the conclusion that both parties waived jury trial and submitted the entire controversy to the trial court for final determination. Both parties had their day in court before the tribunal of their own choice. Upon the record, we treat the matter as one in equity. It was so appealed to this court. To do otherwise would be to sacrifice substance for mere form.

18. Under the undisputed facts of the case and the law applicable thereto, plaintiff was and is entitled to possession of the truck and trailer involved. Its lien has priority over that of defendant. The trial court erred in its findings and conclusions respecting the question of priority and in dismissing plaintiff's complaint.

The decree is reversed and this cause remanded with directions to enter judgment in favor of plaintiff as demanded in plaintiff's complaint.

Plaintiff is entitled to costs.