Argued January 8, reversed and remanded with directions
April 9, 1952

PERRIGO ET AL. *v.* BOEHM ET AL.

242 P. 2d 791

508

*M. E. Reynolds,* of Astoria, argued the cause for appellants. With him on the brief was A. C. Fulton, of Astoria.

*John R. Latourette, Jr.* of Portland, argued the cause for respondents. On the brief was Cecil C. Wright, of Seaside.

Before Brand, Chief Justice, and Hay, Rossman, Warner and Tooze, Justices.

HAY, J.

The plaintiffs, T. W. Perrigo, F. B. Perrigo and Lawrence Perrigo, commenced this proceeding as an action at law to recover damages for alleged fraud and deceit.

In the year 1946, Jed and Vera Wilson, husband and wife, were the owners of a tract of land at Seaside, Oregon, lying easterly of and being partly bounded by the right of way of the Spokane, Portland and Seattle Railroad. On August 1, 1946, they leased a portion of such tract to one Donald Matteson, for a term of ten years. The rent reserved was $100 per year, payable annually in arrear. The boundaries of the whole Wilson tract are set forth in the lease, and those of the leased tract are described as follows:

"Beginning at a point 210 feet, more or less, south of the northwest corner of the above described land, [that is, of the whole Wilson tract] and on the east right of way line of the S. P. & S. R. R.; thence due east 250 feet; thence due south to the north right of way line of the S. P. & S. R. R. 'Y', which is the southern boundary line of the above described parcel of land at that point; to include all land lying west of this described line and to the west boundary line of the above-described land."

In July, 1948, defendants Boehm held said lease by mesne assignments from the original lessee. Plaintiffs Perrigo entered into negotiations with them looking toward the purchase of a sawmill plant which was supposed to be located upon the leased premises, and of an assignment of the Boehms' interest in the lease. Adam Boehm, one of the defendants, from a point upon the S. P. & S. right of way, pointed out to the Perrigos what he represented and apparently believed to be the northern boundary of the leased property. This was a line running slightly to the north of a small building which the Perrigos afterwards used as an office. The true line ran some 300 feet south of the line pointed out by Boehm, but the Perrigos relied upon Boehm's representation as to its location. The Boehms showed the Perrigos the assignment under which they

held, but Mr. F. B. Perrigo objected to the form thereof, in that its description of the leased property was in his opinion insufficient. Mr. Perrigo himself then prepared a form of assignment containing an amended, but completely erroneous description, which was executed by the parties on August 31, 1948. Such assignment included a form of consent thereto by the lessors, which, however, was never signed by them. On September 3, 1948, the parties executed a conditional sale contract, whereby the Perrigos agreed to purchase the sawmill, including the lease of the land, for the sum of $13,200, payable $1,300 in cash on execution of the contract, and the remainder of $11,900 at the rate of $500 per month, beginning October 15, 1948, with interest at 5 per cent per annum until paid. The Perrigos thereupon took possession of a tract which the parties believed to be the land covered by the lease. Such tract included the area described in the original lease, but also included a considerable area outside and to the north thereof. The true north line of the land covered by the original lease bisects the sawmill building, about half of which is on leased and half on unleased land. Upon the unleased land, the Perrigos erected a burner, a planer shed, and a log dump.

In August, 1949, the Perrigos made arrangements with the Reconstruction Finance Corporation to borrow sufficient moneys to discharge the unpaid balance of the conditional sale contract, but the prospective lender required, before making the loan, that the Perrigos should procure the written consent of the lessors to the assignment of the lease to them. Thereupon, the Perrigos tendered to the lessors payment of an annual installment of rent which was about to fall due, and requested that they sign a form of written consent to the assignment. The lessors refused to accept the rent or

to sign the consent, and informed the Perrigos that they were using more land than was covered by the lease. The Perrigos thereupon, through their attorney, notified the Boehms that ''the lease would have to be straightened out'' before they would make any further payments. Receiving no satisfactory response, they instituted the present action.

The complaint alleged the making of the conditional sale contract and the assignment of the lease; the fact that, for the purpose of inducing plaintiffs to enter into said contract, defendants represented to them that the lease covered ''the ground upon which said plant was located and the ground which was necessary and convenient for the operation of the sawmill plant''; that such representations were false and fraudulent, were known by defendants to be false, or were made with reckless disregard to whether they were true or false; and that, because of the insufficiency of the area of land included in the lease, it was impossible for defendants to operate a sawmill successfully thereon. Damages in the sum of $12,214.27 were demanded.

Defendants' amended answer admitted the making of the conditional sale contract and of the assignment of the lease, and denied generally the remainder of the complaint. As an equitable defense, defendants alleged the making of the conditional sale contract and the assignment of the lease; the due payment of an aggregate of $6,400 of installments of the purchase price thereunder; default in payment of a $500 installment due August 15, 1949; that, by reason of such default, the unpaid balance of $6,800 of said purchase price, with interest, and certain incidental items, were immediately due and payable; and that, despite defendants' demand, plaintiffs were unlawfully withholding from defendants the property described in the con-

ditional sale contract. A decree was prayed for, dismissing plaintiffs' action, declaring forfeiture of the conditional sale contract, quieting title in defendants to the property described therein, and giving them judgment for $750 attorneys' fees, attorneys' fees being provided for in the contract. The reply was a general denial.

After a hearing, the trial judge rendered an oral opinion from the bench. He held that the land which was pointed out to the plaintiffs by Adam Boehm was not that which was covered by the lease; that the form of assignment which was prepared by plaintiffs "did not cover property that was by any stretch of the imagination, the land intended"; that plaintiffs were guilty of laches in not presenting the assignment of the lease to the landlords for their acceptance and approval within any reasonable time; that if, during the year that they held the property, plaintiffs expended moneys in making improvements thereto, they could not expect defendants to pay such losses in view of plaintiffs' laches; that there was no legal duty on the part of defendants to secure the approval of the landlords to the assignment; that it was the duty of plaintiffs, when they found that the assigned lease did not cover the land intended, to give defendants an opportunity to straighten the matter out; that, without attempting to minimize their damages by having the error in the description corrected, plaintiffs were "trying to rescind their contract and ask a court of equity to cast upon defendants a very large burden of claimed damages"; that they had no right to rescind the contract without giving defendants an opportunity to correct the description; that there had been no showing made of any purposeful fraud on the part of defendants; that defendants' predecessors had used the

land up to the line pointed out to plaintiffs by Adam Boehm, and that everybody in good faith believed that was the land covered by the lease; that the real fault on the part of defendants was carelessness and not purposeful fraud; that in a court of equity there would have to be a clear showing of damage growing out of "such a mistaken improper conduct" on the part of defendants, and that there was no such showing here; that there was no evidence that the landlords had evicted plaintiffs from the property, and that they might have continued to operate the mill without any trouble, "even though the lease was in such a mess"; that plaintiffs acted wrongfully in rescinding the contract, and that they are still bound by it; that defendants had a right to insist upon foreclosure, but that it would be inequitable under the circumstances to decree a strict foreclosure; that, in lieu thereof, there should be an interlocutory decree giving plaintiffs 60 days to pay into court the unpaid portion of the contract price; that, upon such payment being made, defendants should have 30 days to procure a correction of the lease so as to cover the land which defendants had pointed out to plaintiffs as being the leased land. The oral opinion was followed by findings of fact, conclusions of law, and a decree in accordance therewith. Plaintiffs appeal.

It is apparent from the evidence that defendants were honestly mistaken as to the boundary and area of the land covered by the lease. Their mistake seems to have been shared by the original lessee and by the respective assignees, and there is some evidence that even the lessors were mistaken in like manner.

■■ There was a complete failure of proof on the part of plaintiffs that defendants made the false representations involved herein with knowledge of the fact

that they were false, or even that they made them in reckless disregard of their truth or falsity. The lower court found, and we also find, that, on the contrary, the representations were made by defendants in good faith. That being so, the plaintiffs could not recover damages in that regard in a tort action based upon fraud and deceit, scienter being a necessary element of actionable fraud. *Medford National Bank v. Blanchard*, 136 Or 467, 473, 299 P 301; *Horner v. Wagy*, 173 Or 441, 459, 146 P2d 92. We need not, therefore, discuss the reasons assigned by the trial court for denying damages to plaintiffs in the premises.

■ But, by the same token, defendants, for their part, relied upon an equitable defense to the action which was not available to them. The complaint, as we have said, sounded in tort for fraud and deceit; the equitable matter pleaded by defendants was not comprised of "facts requiring the interposition of a court of equity and material to his [their] defense." § 9-102, OCLA; *Yellow Mfg. Acceptance Corp. v. Bristol*, 193 Or 24, 236 P2d 939, 942.

■ It is true that the court, without first trying the affirmative equitable defense, tried the whole cause as if it were a suit in equity. Plaintiffs made no objection to such procedure, and, ordinarily, we should be disposed to hold that thereby they waived whatever objections they might have had thereto, including their right to have their action at law tried by a jury. *Ward v. Town Tavern*, 191 Or 1, 41, 228 P2d 216, 233; *Yellow Mfg. Acceptance Corp. v. Bristol*, supra, 236 P2d 939, 948. We feel that we cannot, however, permit the decree to stand in the present case. It failed to take into consideration the fact that, even if plaintiffs should pay into court the balance of the sale price, defendants might be unable to procure a correction of

the lease. This was an eventuality which was quite probable to come to pass, and one which the decree made no provision to meet.

■ Section 9-102, OCLA, provides that no cause shall be dismissed for having been brought on the wrong side of the court. Plaintiffs' complaint herein is out of the case. We think that defendants' affirmative answer should stand as a complaint in equity, with permission to defendants to make such amendments thereto as may be desirable and proper, including such as may be necessary to make the landlords and the present tenant or tenants, if any, of the unleased portion of the land, parties to the suit, to the end that an equitable determination of the whole controversy may be effected. The Perrigos, who will then be defendants, should be allowed, by answer, to set up such defenses to the amended complaint as they may have.

As the equity case must be retried, it is desirable that we express our views upon certain of the points which the lower court has passed upon:

■ In our opinion, the court was in error in holding that plaintiffs had rescinded or were attempting to rescind the contract. The bringing of an action for damages for deceit was in itself an affirmance thereof. *Sharkey v. Burlingame Co.*, 131 Or 185, 196, 282 P 546; *Fleishhacker v. Portland News Publishing Co.*, 158 Or 476, 554, 77 P2d 141. Moreover, the evidence shows that plaintiffs still have possession of the land actually covered by the lease and of the personal property included in the conditional sale. Instead of rescinding, they simply instructed their attorney to notify defendants that plaintiffs would not make any more payments under the contract "until the lease was straightened up." Mr. T. W. Perrigo testified as follows:

"Q. You gave up possession of the mill, is that correct? A. No sir, we still have possession, locked up and I have the key, yes sir.

"Q. You haven't operated that mill, is that correct? A. No sir, it is not operating; we didn't after we found we didn't have a lease; we had some timber bought and we dumped that in and sawed it up.

"Q. In other words, some of your buildings still occupy leased ground that did not belong to you? A. That is right; the planer shed is on the ground Mr. Wilson said we never have had a lease on.

"Q. You haven't removed the buildings; they are still there? A. No sir, it is right there.

"Q. Have you been asked to remove the buildings? A. No sir, he did ask us to take our lumber off there about three weeks ago; he asked to take the lumber off and I got a truck and took off all the lumber we had around there."

In our opinion, the Perrigos were not guilty of laches in presenting their assignment to the lessors for approval. The evidence shows that, before entering into the contract of sale, they interviewed the lessors and secured their oral consent to the assignment. Covenants restricting assignment of leases without the written consent of the lessor are for the lessor's benefit and may be waived by him, and such waiver may be made orally. 32 Am Jur 303, Landlord and Tenant, § 341. Moreover, the fact that the lessors herein permitted the Perrigos to take possession of the premises, including the unleased portion, and remain in possession for nearly a year, without objection, was in itself a waiver. 51 CJS 547, Landlord and Tenant, § 34b.

We are of the opinion that the Perrigos were evicted by the landlords from the unleased portion of the premises. (By "unleased portion," wherever used

herein, we mean that portion of the land which, although occupied by the original lessee and his assigns, was not any part of the land which was actually described and demised by the lease.) While there was no physical ouster, and no eviction by process of law, neither of those procedures is necessary to constitute eviction under the modern rule. 52 CJS 159, Landlord and Tenant, § 445. Eviction "may now be taken to mean anything of a grave and permanent character done by the landlord * * * with the intention and effect of depriving the tenant of the use, occupation, and enjoyment of the demised premises or any substantial part thereof, * * *" Ibid. The lease shows that the demise was made for use of the land by the lessee for sawmill purposes. The lessee and his assignees, apparently by mutual mistake, were put into possession of the unleased as well as the leased land. The rental was made payable either in produce of the sawmill or in money. The evidence is undisputed that, without the unleased portion, the premises were valueless for sawmill purposes, as there was insufficient area for the piling of lumber. The landlords ordered the Perrigos to remove from the unleased portion, and proceeded, without their consent as far as the evidence shows, to rent such portion to a stranger. These matters, in our opinion, constituted constructive eviction. 52 CJS 170, Landlord and Tenant, § 451.

The decree is reversed, and the cause is remanded with directions to take such further proceedings as shall not be inconsistent with this opinion. No costs to any party.